IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO ex rel.
CORNERSTONE CONTRACTORS OF
NEW MEXICO, LLC,

      Plaintiff,

vs.                                                             Civ. No. 23-1047 DHU/SCY

INTEGRATED WATER SERVICES, INC.,
and EVEREST RESINURANCE
COMPANY,

      Defendants.

### ORDER REGARDING MOTION TO COMPEL

This matter comes before the Court on a motion to compel Rule 30(b)(6) testimony filed by Plaintiff Cornerstone Contractors of New Mexico, LLC ("Cornerstone") on October 8, 2024, seeking financial information from Defendant Integrated Water Service, Inc. ("IWS"). Doc. 39. After Cornerstone filed the motion, IWS agreed to provide the requested information, resolving the underlying issue. However, Cornerstone requests its fees and costs associated with the motion under Rule 37(a)(5)(A). The Court finds that IWS was substantially justified in its initial opposition to disclosure of the financial information and so denies fees under Rule 37. However, because IWS failed to timely follow the proper procedure regarding deposition objections, the Court will allow a second Rule 30(b)(6) deposition and will shift costs for that deposition as provided in Rule 30(d)(2).

### BACKGROUND

Plaintiff Cornerstone Contractors of New Mexico, LLC filed this complaint in state court on October 9, 2023. Doc. 1-1 ("Compl."). Defendants Integrated Water Services, Inc., and Everest Reinsurance Company removed the case to federal court on November 22, citing

diversity jurisdiction. Doc. 1 (Notice of Removal); Doc. 10 (Amended Notice of Removal). In the complaint, Cornerstone alleges that IWS entered into a contract in 2021 with the City of Bloomfield, New Mexico, for improvements to facilities. Compl. ¶ 5. IWS subcontracted with Cornerstone for concrete services and materials. *Id.* ¶ 8. Cornerstone performed the work and completed its obligations in October 2021. *Id.* ¶ 13.

The concrete cracked and needed repairs, repairs which Bloomfield approved in May 2021. *Id.* ¶¶ 14-16. IWS directed Cornerstone to perform the repairs on a "time and materials" basis. *Id.* ¶ 17. Cornerstone performed the repairs from July to December 2021, which involved the application of Xypex concentrate sealing to interior basin walls to remedy cracking and leaks. *Id.* ¶ 18. "IWS subsequently sought a change order request from Cornerstone to confirm the amounts due and owing, which Cornerstone provided on November 19, 2021." *Id.* ¶ 19. "The Change order request was in the amount of $223,955.97, which does not appear to be disputed by IWS." *Id.* ¶ 20. "On June 21, 2022, IWS confirmed that it agreed with this amount and represented that the change orders had been submitted to its accounts payable." *Id.* ¶ 21. "Later, on July 19, 2022, IWS changed course and stated that it would not pay the change orders 'until the claim goes through mediation,' refencing an apparent dispute between IWS and Bloomfield." *Id.* ¶ 22.

"Despite Cornerstone's subsequent requests for status on the payment of this amount, IWS has failed to either provide a status or otherwise pay the balance due and owing." *Id.* ¶ 23. "IWS has never communicated a belief to Cornerstone that the cracking and leaks at the Project are in any way attributable to a defect in Cornerstone's work." *Id.* ¶ 24. "To the contrary, IWS specifically advised Cornerstone that its forensic engineers believe the cracking and leaks were caused by a design issue." *Id.* ¶ 25. "Notwithstanding the absence of any valid basis upon which

to withhold payments owed to Cornerstone, IWS has refused to pay Cornerstone amounts due and owing for the requested Xypex work." *Id.* ¶ 26. "Beyond the amounts attributable the Xypex change orders approved by IWS, IWS has failed to pay other amounts outstanding under the Subcontract." *Id.* ¶ 27.

The complaint includes two causes of action: Count I, Little Miller Act (action on the payment bond for the project supplied by Defendant Everest); Count II, breach of contract (against IWS); Count III, breach of the duty of good faith and fair dealing (against IWS); Count IV, promissory estoppel (against IWS); and Count V, unjust enrichment (against IWS). *Id*. ¶¶ 29-55. Counts III and IV contain a boilerplate request for punitive damages. *Id.* ¶¶ 42, 50 ("IWS's acts and omissions, as alleged herein, were willful, wanton, reckless, and intentional, thereby entitling Cornerstone to an award of punitive damages.").

On February 14, 2024, the Court entered a scheduling order under which discovery was due August 9, 2024. Doc. 19. On July 26, Cornerstone issued a notice for a Rule 30(b)(6) deposition of IWS. Doc. 39 at 2. The parties rescheduled the deposition twice, and Cornerstone issued amended Rule 30(b)(6) deposition notices on September 13 and September 17, finally setting the deposition for 9 a.m. on September 26. Docs. 34 & 35 (certificate of service); Doc. 39 at 16-18 (copy of Second Amended Notice). By joint request of the parties on September 19, the Court issued an order extending the discovery deadline to October 4. Doc. 37.

All of the Rule 30(b)(6) deposition notices included a topic 7 as follows: "IWS's annual revenue and profits in 2021, 2022, 2023, and 2024." *See* Doc. 39 at 17 ¶ 7; *see also id.* at 8 (representing that this topic was in the original July deposition notice).[1] On September 20,

---

[1] Cornerstone failed to file a certificate of service on the docket for the original July notice, as required by the rules. D.N.M.LR-Civ. 26.2. Nonetheless, the Court accepts counsel's

3

2024—or six days prior to the deposition—counsel for IWS emailed Cornerstone's counsel, raising a relevance objection to topic 7. *Id.* at 20-21. The email advised that "IWS objects to this topic and its designee will not be preparing for or answering any questions regarding examination topic number 7." *Id.* On September 23, Cornerstone counsel replied:

> I disagree with your position that "this is merely a breach-of-contract case." Rather, in addition to the breach-of-contract claim (and others) asserted in its complaint, Cornerstone asserts a claim for breach of the duty of good faith and fair dealing and expressly seeks an award of punitive damages. It is well-established in New Mexico that punitive damages are available for breach of the duty. *Smith v. Liberty Mut. Fire Ins. Co.*, 495 F. Supp. 3d 1019, 1034 (D.N.M. 2020) (quoting *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, 133 N.M. 669, 68 P.3d 909, 927) ("breach of the implied covenant may be the basis for an award of punitive damages"). It is likewise established, as acknowledged in your email, that information related to a party's financial condition is discoverable where punitive damages are at issue. *See e.g. Clement v. Mt. States Logistics*, 2006 U.S. Dist. LEXIS 95650, at *5 (D.N.M. Aug. 28, 2006) ("[I]f a plaintiff has alleged sufficient facts to claim punitive damages against a defendant, information of the defendant's net worth or financial condition is relevant because it can be considered in determining punitive damages.").
>
> Given the claims at issue and the request for punitive damages, I doubt the Court will have trouble overruling the objection. We would prefer to avoid motion practice and simply proceed with the deposition. If IWS does not agree, we will seek fees and costs in accordance with Rule 37. Please advise.

*Id.* at 20.

Five days later—at 8:25 a.m. on the morning of the deposition scheduled for 9:00 a.m.—counsel for IWS replied to the email:

> In discussing this with my client and re-reviewing the complaint, I do not believe that simply a blanket allegation of punitive damages as a result of a breach is enough. In any event, our position remains the same and is based on the following. Additionally, there is no protective order in place in this case and providing such sensitive financial information to a subcontractor who regularly works in the same industry and with IWS's competitors creates inherent risks that such information could end up in the wrong hands. IWS has a very simpl[e] and enforceable reason for not paying Cornerstone on this project and the complaint

---

representation as to the timing of this notice and the contents of the request for financial information, which is not disputed by IWS.

4

>does not allege any overt acts that IWS['s] decision is based on malice, willful or clearly unsubstantiated reasons. Simply put, the compl[ai]nt does not contain sufficient allegations to establish a prima facie case for punitive damages to implicate disclosure of sensitive confidential financial information.

*Id.* at 19. The email then cited case law holding that financial information is discoverable only if the claim for punitive damages is not "spurious." *Id.*

Despite this dispute, the deposition proceeded on September 26. Doc. 39 at 2. Defendant IWS's designee indicated that he had been advised by counsel not to answer questions related to topic 7, and he in fact did not answer questions on the topic. Doc. 42 at 11:14-25. Eight days after the deposition, on October 4, Cornerstone requested that IWS withdraw its objection and submit to a supplemental deposition.[2] Doc. 39 at 22-23. Cornerstone contended that "IWS has never requested a protective order in this matter even as it has produced more than 30,000 pages of documents. As the party asserting the need for such an order, it is incumbent on IWS to request one." *Id.* at 22. And, for the first time, Cornerstone explained its punitive damages theory:

>These allegations are supported by the facts established in discovery, including that IWS had no change order or other assurance of payment from Bloomfield when it directed Cornerstone to proceed with the Xypex procedure before proceeding to hide behind the pay-when-paid clause in the subcontract, that IWS internally discussed keeping Cornerstone on the hook with promises of smaller payments to accomplish the goal of completing the Xypex procedure at Cornerstone's expense, and that IWS repeatedly changed its story as to the reason for delay of payment and whether it intended to pay Cornerstone at all.

*Id.* at 22-23. "If Cornerstone is required to seek judicial intervention on this issue, it will seek to recover its expenses under Rule 37. Please advise by Monday, October 7, 2024 whether IWS

---

[2] Cornerstone, in its motion, asserts it sent this letter on October 3, 2024. Doc. 39 at 2. The letter, however, is dated October 4, 2024, Doc. 39 at 22, and the record indicates it was sent by email on October 4, 2024 (a Friday) at 3:51 pm.

intends to withdraw its objections and submit to a supplemental deposition." *Id.* at 23 (emphasis removed).

In response, on Tuesday, October 8, at 1:55 pm, IWS reiterated its position that the complaint did not state a claim for punitive damages and that the facts of the case did not support such a claim. Doc. 41-1 at 4. Less than an hour later, at 2:52 pm, Cornerstone filed the present motion to compel. Doc. 39 (CM ECF activity notice). On October 10—two days later—IWS responded to the email chain to advise:

> I have just been informed by the CEO at IWS that he is fine in providing this information so long as it is agreed that it will not be shared beyond your client, your office and any[one] on a need to know basis. If your client will agree to withdraw its motion, IWS will either provide a witness to testify at a continued deposition or in response to the interrogatory.

Doc. 41-1 at 3. Cornerstone responded the same afternoon, stating that it would not withdraw the motion to compel unless IWS agreed to reimburse its costs in filing the motion. *Id.* at 2. On October 21, IWS provided financial information but did not agree to pay the costs for the motion to compel. *Id.* Accordingly, the parties continued to brief the present motion. Docs. 41 & 42.

## DISCUSSION

1. <u>IWS was substantially justified in its initial objection to providing financial information.</u>

Given that IWS provided Cornerstone with its financial information, Cornerstone acknowledges that the underlying issue in the motion to compel is moot. Doc. 42 at 2. However, because IWS provided this information after Cornerstone filed a motion to compel, Cornerstone continues to seek its attorney's fees and costs under Rule 37.

Federal Rule of Civil Procedure 37 provides that

> [i]f the motion [to compel] is granted--*or if the disclosure or requested discovery is provided after the motion was filed*--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion,

> the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). Here, because IWS provided the information sought in topic 7 after Cornerstone filed the motion to compel, Rule 37 mandates payment of reasonable expenses, including attorney's fees, subject to three exceptions. The Court must not order expenses if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

The parties focus their analysis on the "substantially justified" exception, and so will the Court. "Substantially justified" is not a difficult standard to meet. *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015) ("substantially justified" is a "less stringent standard"); *Pierce v. Underwood*, 487 U.S. 552, 565, (1988) (it does not mean "justified to a high degree," but rather is satisfied if there is a "genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action" (alterations omitted)).

IWS argues that its initial position—objecting to providing financial information—was substantially justified; Cornerstone insists that it was not. The parties agree that a plaintiff seeking punitive damages against a company is entitled to obtain discovery regarding that company's financial resources in certain circumstances. Doc. 41 at 4, 7. The parties disagree, however, about what those circumstances are.

Courts in this District, including the undersigned, have held that a plaintiff need only demonstrate that a punitive damage claim is not spurious. *See Gutierrez v. Uni Trans, LLC*, No. CV 21-73 KWR/SCY, 2021 WL 2821071, at *4 (D.N.M. July 7, 2021) ("Federal law 'permits discovery of a defendant's net worth without requiring the plaintiff to establish a prima-facie

7

case for punitive damages.' Plaintiff's burden is only to show that the request for punitive damages is 'not spurious.'") (quoting *Pedroza v. Lomas Auto Mall, Inc.*, No.07cv591 JB/RHS, 2008 WL 4821457, at *2 (D.N.M. July 10, 2008)). In order to meet this standard, the parties disagree as to whether a court is limited to the allegations in plaintiff's complaint or can consider evidence a plaintiff has presented. Cornerstone points out that IWS provides no legal support for the notion that a court is limited to allegations in a complaint and that other judges in this District have looked to evidence beyond the complaint. Doc. 42 at 6. Resolution of this issue is not essential to the Court's decision and the Court therefore declines to decide it. That is because, even accepting that the Court may consider evidence outside the complaint, the Court finds IWS's position to have been substantially justified.

The Court begins its analysis by focusing on the timeline of various events at issue. That timeline begins with Cornerstone's complaint. The Court agrees with IWS that Cornerstone's complaint fails to make a case for punitive damages sufficient to justify discovery of IWS's financial information. The factual allegations in the complaint establish a breach of contract claim: Cornerstone performed repair work for which IWS owed payment, but IWS did not pay. Punitive damages are rarely allowed in breach of contract cases. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 222 (2022) ("punitive damages are generally not available for breach of contract") (cleaned up); *Bogle v. Summit Inv. Co., LLC*, 2005-NMCA-024, ¶ 28, 107 P.3d 520, 530 ("punitive damages may be recovered for breach of contract when the defendant's conduct has been sufficiently malicious, oppressive, fraudulent, or committed recklessly with a wanton disregard for the plaintiff's rights"). Indeed, Cornerstone makes no attempt to argue that allegations in its complaint satisfy the non-spurious standard. Instead, Cornerstone argues that it is not limited to the allegations in its complaint and references

numerous items of evidence obtained in discovery to support its argument. The Court need not decide whether the evidence Cornerstone presents in its motion to compel provides non-spurious grounds in support of its claim for punitive damages.

That is because IWS did not continue to oppose Cornerstone's request for financial information once it read Cornerstone's motion to compel. Instead, it agreed to provide the financial information Cornerstone requested. As a result, in deciding whether IWS was substantially justified in opposing Cornerstone's motion to compel, the Court looks only to information Cornerstone provided IWS at the time of IWS's opposition; that is, before Cornerstone filed its motion to compel. The only pre-motion-to-compel information Cornerstone provided about the basis for its punitive damages claim came in the meet-and-confer letter Cornerstone sent IWS on October 4:

> These [punitive damage] allegations are supported by the facts established in discovery, including that IWS had no change order or other assurance of payment from Bloomfield when it directed Cornerstone to proceed with the Xypex procedure before proceeding to hide behind the pay-when-paid clause in the subcontract, that IWS internally discussed keeping Cornerstone on the hook with promises of smaller payments to accomplish the goal of completing the Xypex procedure at Cornerstone's expense, and that IWS repeatedly changed its story as to the reason for delay of payment and whether it intended to pay Cornerstone at all.

Doc. 39 at 22-23.

The question before the Court is whether IWS was substantially justified when it rejected Cornerstone's request for financial information after receiving this October 4 letter. That is, the Court asks whether, between the time Cornerstone sent its letter (late in the afternoon on Friday, October 4) and the time IWS responded that it opposed Cornerstone's request for financial information (early in the afternoon on Tuesday, October 8 and one day after the short deadline Cornerstone imposed for consideration of the information), IWS was substantially justified in

9

opposing the request for financial information. The Court concludes IWS was substantially justified in opposing Cornerstone's request.

To be sure, as Cornerstone points out, much of the information on which it relies to make its punitive damages case was already in IWS's possession. As the parties' briefs make clear, however, IWS's view of the significance of this evidence is much different than Cornerstone's view. For instance, IWS's view of various internal communications, and the reasons for those communications are much different than Cornerstone's view. Cornerstone asserts that: "IWS' internal communications demonstrate that it was strategizing to pay Cornerstone just enough to placate it so as to maintain Cornerstone's willingness to assist with the leak repairs." Doc. 39 at 4. In support, Cornerstone cites an April 27 internal email with the following passage:

> My opinion on future bonding is as follows. The risk for the project is currently in the leaking of the SBR basins. I should not release Phase 4 bond until this issue is 100% resolved, we have a bond on a portion of the SBR walls and we should keep it. Currently we have a contractor that is working towards resolution of this issue and is compliant on fixing the leaks. If I hold up payment on Phase 5 more than a week or two in the future, Cornerstone's mood on the leaks may change drastically and become less helpful.

Doc. 39 at 39. But a factfinder could interpret this email as meaning only that a contractor who agreed to work on repairs might not do more work if it is not paid for previous work, rather than as an assertion that the contractor should never be paid for future work.

IWS, for its part, asserts that it "has clear contractual rights to withhold and offset payments while it seeks to adjudicate its claims against the owner for non-payment which include the amounts sought by Plaintiff – which is precisely what IWS has been doing." Doc. 41 at 7. In IWS's view, this pay-when-paid clause in its subcontract not only justifies its delayed payments but also forecloses Cornerstone's claim for punitive damages. Although Cornerstone ultimately may be successful in convincing a factfinder that its view regarding liability and punitive damages is the correct one, the Court need not form a conclusion as to the merits of

Cornerstone's allegations. Instead, to decide the present motion, the Court need only find that, at the time IWS opposed Plaintiff's request for financial information, the refusal to provide financial information was substantially justified.

As set forth above, "substantially justified" is not a difficult standard to meet. *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015) ("substantially justified" is a "less stringent standard"); *Pierce v. Underwood*, 487 U.S. 552, 565, (1988) (it does not mean "justified to a high degree," but rather is satisfied if there is a "genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action" (alterations omitted)). Given the limited information Cornerstone provided in its October 4 letter, the general unavailability of punitive damages in contract disputes, the short time IWS had to consider this information, and the disputes over the interpretation of evidence, the Court concludes that IWS's initial opposition to the motion to compel was substantially justified. Because the Court finds IWS's position to be substantially justified, it denies Cornerstone's requests for attorney's fees and costs under Rule 37(a)(5)(A).

    2. <u>IWS failed to follow the procedure for an objection to topic 7.</u>

Cornerstone next argues that the Rule 30(b)(6) witness's refusal to answer questions during the deposition violated the Rules of Civil Procedure. Doc. 39 at 13-14; Doc. 42 at 4-5. The Court finds that IWS failed to follow the required procedure to resolve its objection to the noticed deposition topics.

To reiterate, Cornerstone sought financial information from IWS through a Rule 30(b)(6) deposition. This means, in advance of the deposition, Cornerstone was required to disclose "the matters for examination" it would cover during the deposition so that IWS could designate and prepare a witness to address those topics. Fed. R. Civ. P. 30(b)(6). Cornerstone complied with this requirement. On July 26, 2024, Cornerstone issued its first notice for a Rule 30(b)(6)

11

deposition of IWS, including a topic of inquiry for "IWS's annual revenue and profits in 2021, 2022, 2023, and 2024." Doc. 31 at 2 ¶ 7. After the parties rescheduled the deposition for September 26, Cornerstone, on September 13, issued an amended Rule 30(b)(6) deposition notice that once again included as topic 7: "IWS's annual revenue and profits in 2021, 2022, 2023, and 2024." Doc. 39 at 17 ¶ 7.

      The procedure for a party to object to a Rule 30(b)(6) topic is, first, to attempt to resolve the issue through communication with opposing counsel. Fed. R. Civ. P. 30(b)(6) ("Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination."). Instead of doing so "promptly," IWS waited almost two months to initiate such discourse. Specifically, in an email sent on Friday afternoon, September 20, 2024, IWS asserted its financial information was not discoverable because "without a claim (i.e., — punitive damages) . . . such information [related to defendant's financial condition] is irrelevant." Doc. 39 at 21. IWS further wrote, "Of course, both my client and I will reconsider its position if provided a valid explanation as to [why] this information is necessary and critical to Cornerstone's claims in this case." *Id*. Cornerstone responded the following Monday morning, September 23, pointing out that the complaint expressly seeks punitive damages. *Id.* at 20. Other than referring to the demand for punitive damages in its complaint, Cornerstone provided no basis to support such a claim. *Id.* This led IWS to respond, on September 26—the morning of the deposition—"I do not believe that simply a blanket allegation of punitive damages as a result of a breach is enough." *Id.* at 19.

      Even if IWS were correct about this assertion, IWS did not follow the procedure the Federal Rules of Civil Procedure provide for resolving such disputes. Rule 26(c) provides that "[a] party from whom discovery is sought may move for a protective order," including

"forbidding inquiry into certain matters." If IWS had raised this issue "promptly," as the rules require, IWS could have filed a motion which would have allowed the Court to address this issue before the deposition.

Instead, IWS instructed its witness to not answer questions related to topic 7 at the deposition. Instructing a witness not to answer a question at a deposition on the basis of a relevance objection is not a course the Federal Rules of Civil Procedure contemplate or condone. Under Rule 30(c)(2), if a party has an objection at the time of a deposition, the objection "must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3) [to terminate or limit for bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party]." Fed. R. Civ. P. 30(c)(2). In the response to the present motion, IWS does not argue that it limited its witness's testimony for any of those enumerated reasons and it presently does not invoke any of the exceptions in the rule.

Rather, IWS argues that testimony related to topic 7 is irrelevant. "Relevance is an issue to be determined by the court when evidence is sought to be admitted, not by the parties during a deposition." *Rodriguez v. Presbyterian Healthcare Servs.*, No. CV 11-238 JEC/LFG, 2012 WL 12894833, at *9 (D.N.M. Apr. 3, 2012), *report and recommendation adopted*, No. 11-CV-238 JEC/LFG, 2012 WL 12896388 (D.N.M. Aug. 22, 2012) (citing *Kingston v. Nelson*, 2007 WL 2985046, *6 (D. Utah Oct. 11, 2007)). Thus, "it is improper for [a witness] to decide at her deposition what questions she will fully answer based on her assessment of the relevancy of those questions. Fed. R. Civ. P. 30(c)(2) requires that deposition testimony be taken subject to

13

objection. In other words, defending counsel may state an objection, but the deponent is required to answer." *Id.* (footnote omitted).

It is true that IWS expressed concern in its September 26 email that "providing such sensitive financial information to a subcontractor who regularly works in the same industry and with IWS's competitors creates inherent risks that such information could end up in the wrong hands." Doc. 39 at 19. The Court need not resolve whether this would have been a valid basis (i.e., harassment or oppression) for refusing to answer deposition questions in September. If IWS were concerned about the sensitivity of this information, it had ample notice that it needed to resolve this issue before September.

IWS knew on July 26, two months before the deposition took place, that Cornerstone was going to ask questions on topic 7. Rather than waiting until the week before the deposition to communicate its objections, IWS was required to "promptly" confer with Cornerstone. Fed. R. Civ. P. 30(b)(6). IWS failed to do so and offers no explanation for this procedural failure. Indeed, prior to filing to the present motion, Cornerstone pointed out that "IWS's method of asserting its objections and refusal to answer the questions during the deposition [was] wholly improper under the Rules of Civil Procedure." Doc. 39 at 23. IWS failed to respond to this argument. Doc. 41-1 at 4. And in the present briefing, after Cornerstone again raised the procedural defect, IWS continues its failure to offer any explanation.

The remedy for the procedurally improper refusal to provide the information during the deposition is a second 30(b)(6) deposition. IWS has already agreed to this second deposition. Doc. 41 at 2; Doc. 41-1 at 2. But because IWS failed to promptly confer about its objections, the Court will order IWS to pay the costs of the second deposition. *See* Fed. R. Civ. P. 30(d)(2) ("The court may impose an appropriate sanction--including the reasonable expenses and

14

attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent."). Accordingly, the Court will extend the discovery deadline to 30 days from the entry of this Order for the limited purpose of allowing the parties to reopen the 30(b)(6) deposition of IWS regarding topic 7. Such a deposition is limited to one hour. Additionally, should Cornerstone wish to conduct this second 30(b)(6) deposition, the Court will shift the costs for the deposition under Rule 30(d)(2).

## CONCLUSION

The Court rules on "Plaintiff Cornerstone Contractors of New Mexico, LLC's Motion to Compel Rule 30(b)(6) Testimony from Defendant Integrated Water Services, Inc. Regarding its Financial Condition" (Doc. 39) as follows:

- The discovery deadline is extended to 30 days from the entry of this Order for the limited purpose of allowing the parties to reopen the 30(b)(6) deposition of Defendant Integrated Water Services regarding topic 7, with the deposition limited to one hour;

- The costs of this deposition shall be paid by Defendant Integrated Water Services;

- Plaintiff Cornerstone's motion to compel financial information is DENIED AS MOOT; and

- Plaintiff Cornerstone's request for attorney's fees and costs associated with the motion to compel is DENIED.

**IT IS SO ORDERED.**

                                            **STEVEN C. YARBROUGH**
                                            **UNITED STATES MAGISTRATE JUDGE**